# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50258 | **DATE** | 7/11/2001 |
| **CASE TITLE** | FLYNN vs. MID-STATES SCREW CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendant Mid-States Screw Corporation's motion to strike is granted in part and denied in part. Defendant's Rule 56 motion for summary judgment is granted in part and denied in part. At the next discovery conference with the Magistrate Judge, the attorneys are to set up a settlement conference with the Magistrate Judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUL 11 2001 | 23 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| X | Copy to judge/magistrate judge. | | 7-11-01 | |
| | | | date mailed notice | |
| /SEC | courtroom deputy's initials | 2001 JUL 11 PM 3:17 U.S. DISTRICT COURT CLERK | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

GERALDINE FLYNN,        )
                        )
        Plaintiff,      )    No. 99 C 50258
                        )
    v.                  )
                        )
MID-STATES SCREW        )
CORPORATION,            )
                        )
        Defendant.      )

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff Geraldine Flynn, a former employee of defendant Mid-States Screw Corporation ("Mid-States"), has sued Mid-States under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., for sexual harassment (Count I), retaliation (Count II) and constructive discharge (Count IV).[1] Currently pending is Mid-States' motion for summary judgment, filed pursuant to Fed.R.Civ.P. 56, with respect to Counts I, II, and IV, and its motion to strike. The court has jurisdiction over Flynn's complaint pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper as the alleged events giving rise to her claims arose in this district and division. See 28 U.S.C. § 1391(b).

---

[1] On November 5, 1999, the court granted Mid-States' motion to dismiss Count III, a discrimination claim based on the Illinois Human Rights Act, Flynn having no objection.

## II. <u>Facts</u>

Flynn worked at Mid-States as a part-time accounting clerk from 1991 through April of 1997; during the majority of this time, she reported directly to Rick Aylward, the Controller. (LR56.1(a) ¶ 4; LR56.1(b) ¶ 2) Mike Kranish was the Vice-President and Sales Manager of Mid-States and worked in the same office as Flynn. (LR56.1(b) ¶ 3) Flynn's sexual harassment claim is based on Kranish's conduct, specifically:

- from 1991 through 1997, Kranish brought pornographic newspapers, photographs, or magazines to the office and would share them with employees and leave them on his desk in plain view;

- Kranish regularly discussed pornographic movies with other employees and Flynn regularly overheard the conversations;

- in 1992 or 1993, Kranish showed Flynn a picture of a baby which had been altered to show adult genitals;

- in 1994 or 1995, Kranish discussed his sex life with another female employee (specifically, his wife's lack of desire to have sex with him), in front of Flynn;

- in 1995, Kranish showed newspaper ads of topless and nude dance establishments in the Rockford area to Flynn;

- in 1996, Kranish would have women's lingerie sent to him at the office. Upon its arrival, he would show the lingerie to

2

everyone in the office and on one occasion, asked a female receptionist to model it for him;

- in late 1996, Kranish invited an x-rated video salesman to the office and told the employees the salesman would be selling pornographic videos to them in Mid-States' parking lot;

- starting in late 1996 and lasting until she left the company in 1997, Kranish declared Fridays as "dirty joke Friday" and encouraged employees to tell dirty jokes on that day;

- in January 1997, Kranish had a conversation with a receptionist about sex toys and sexual vibrators in the presence of all employees; and,

- in February 1997, Flynn saw Kranish fondling his wife (she also worked at the company) as she sat on his lap.

(LR56.1(b) ¶¶ 4-13)

In November of 1995, Flynn complained to Kranish about his behavior. (Id. ¶ 15) Thereafter, she was ostracized and ridiculed. For example, Kranish told another employee that Flynn was a "prude," and that he wanted her to stay home and raise her children. (Id. ¶ 16) He told the employee to have nothing further to do with Flynn, that he was going to make her life "miserable" so she would quit, and said to "freeze out" Flynn. (Id.) Kranish continued telling sex jokes and discussing sexual topics. (Id. ¶ 17)

3

Flynn also complained to Bruce Horst, an owner of the company, about Kranish's behavior, in December of 1996. (Id. ¶ 18) Nothing was done. Throughout her employment, Flynn also complained to her direct supervisor, Aylward, about Kranish's behavior. (Id. ¶ 19) On or about March 3, 1997, Flynn again met with Kranish about his behavior; Aylward was present. (Id. ¶ 20) The discussion became heated and Kranish threatened to fire Flynn and her husband (who also apparently worked at the company) if she did not stop complaining about Kranish's sexual behavior. (Id.) On April 4, 1997, Flynn complained to Roy Fridh, another owner of the company, about Kranish's sexually offensive behavior. (Id. ¶ 21) Three days later, Kranish told Flynn she was to start training his wife for Flynn's bookkeeper position. (Id. ¶ 22) Flynn then went to Horst and asked him whether she still had a job. Horst did not respond. Flynn told him she quit, telling him she believed Kranish was replacing her with his wife because she had complained about his sexually offensive behavior. (Id. ¶ 24)

### III. Analysis

#### A. Mid-States' Motion to Strike

Flynn filed an affidavit as an exhibit in support of her response to Mid-States' motion for summary judgment. Mid-States has filed a motion to strike paragraphs ten and fifteen of the affidavit, arguing Flynn has failed to establish a foundation

4

showing the information contained therein is based on personal knowledge. The court disagrees with respect to paragraph ten, but agrees that paragraph fifteen appears to be based on hearsay. The court does not consider hearsay statements that are otherwise inadmissible at trial at the summary judgment stage. Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1265 (7th Cir. 1993), cert. denied, 511 U.S. 1005 (1994).

Mid-States also moves to strike Flynn's exhibit B, a document Rick Aylward purportedly wrote and signed, arguing the document runs afoul of Fed.R.Civ.P. 56(f). Rule 56(f) applies when a party opposing a motion is claiming the party cannot, for some reason, present certain essential facts; in such a situation, Rule 56(f) allows the court to order additional discovery before ruling on the motion. Fed.R.Civ.P. 56(f); Woods v. City of Chicago, 234 F.3d 979, 990 (7th Cir. 2000). Flynn is making no such claim here and Rule 56(f) is inapplicable.

### B. Mid-States' Motion for Summary Judgment

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 669 (7th Cir.), cert. denied, 121 S. Ct. 1603

(2001). A genuine issue of material fact exists only when a reasonable jury could find for the nonmoving party based on the record as a whole. Bekker, 229 F.3d at 669. The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000); EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 436 (7th Cir. 2000). A complete failure of proof concerning an essential element of a case necessarily renders all other facts immaterial. Ribando v. United Airlines, Inc., 200 F.3d 507, 509 (7th Cir. 1999).

**1. Sexual Harassment**

To survive summary judgment on a hostile work environment claim, a plaintiff must present evidence that would establish the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment. Russell v. Board of Trustees of Univ. of Ill., 243 F.3d 336, 343 (7th Cir. 2001). In evaluating Flynn's claim at this stage, the court must initially determine what evidence it can consider. See id. In general, in Illinois a plaintiff may challenge only discriminatory conduct that occurred within 300 days of the filing of her underlying discrimination charge. 42 U.S.C. § 2000e-5(e)(1); Russell, 243 F.3d at 343. Mid-States argues the court should not consider the majority of incidents about which Flynn complains because they

6

occurred more than 300 days before she filed her discrimination charge.

At the outset, the court must first determine when Flynn filed her discrimination charge. Mid-States argues Flynn filed her discrimination charge on October 28, 1997. (LR56.1(b) ¶ 25, Def. Resp.) Flynn, on the other hand, argues she filed her charge on June 3, 1997, and relies on an allegation in her complaint to this effect. (Compl. ¶ 3) The charge itself shows a stamp from the Illinois Department of Human Rights ("IDHR"), intake unit, with a date of November 3, 1997. (Def. Exh. 1, Flynn dep., dep. exh. 1) The notary's and Flynn's signatures are dated October 28, 1997. (Id.) Flynn claims that due to problems at the IDHR, although she filed the charge on June 3, 1997, the IDHR did not begin processing it until late October. The problem with her argument is the lack of evidence. At the summary judgment stage, Flynn cannot simply rest on her pleadings. Oest v. Illinois Dep't of Corr., 240 F.3d 605, 610 (7th Cir. 2001) (because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, pointing to specific facts showing there is a genuine issue for trial). During her deposition, Flynn confirmed her signature and that she signed the charge on October 28, 1997.

7

(Def. Exh. 1, Flynn dep., p. 37)  The court accepts October 28, 1997 as the filing date.

Accepting October 28, 1997 as the filing date, the court can reach back beyond 300 days only if Flynn establishes the course of conduct about which she complains constitutes a continuing violation.  The continuing violation theory allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitation period.  Speer v. Rand McNally & Co., 123 F.3d 658, 663 (7th Cir. 1997).  Courts have identified a number of different fact patterns that indicate continuing violations.  Freeman v. Madison Metro. Sch. Dist., 231 F.3d 374, 381 (7th Cir. 2000).  With a hostile environment claim, a plaintiff commonly pursues a theory of showing the harm about which she claims was part of a pattern of conduct, and she was reasonable not to perceive her working conditions as intolerable until the acts of harassment had, through repetition or cumulation, reached the requisite level of severity.  Russell, 243 F.3d at 343.

Here, Flynn admits she complained to Kranish about his "sexually offensive" behavior in November of 1995.  (LR56.1(b) ¶ 15)  She also complained about Kranish's "sexually offensive behavior" to her supervisor, Rick Aylward, throughout her employment.  (Id. ¶ 19)  At the very least, she had formed the belief that she was a victim of sexual harassment by December of

8

1996, when she complained to Horst. (Id. ¶ 18) Nothing that happened later added materially to the conditions of which she complained; it was just more of the same. See DeClue v. Central Ill. Light Co., 223 F.3d 434, 435-36 (7th Cir. 2000). It was at that time, when Flynn had formed the belief that Kranish was sexually harassing her, that the clock started ticking. See Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344-45 (7th Cir.) (continuing violation theory inapplicable to plaintiff's sexual harassment claim; she believed, as shown by her complaints to management, she was a victim of harassment long before she filed her discrimination charge), cert. denied, 528 U.S. 874 (1999).

There is no evidence in the record regarding when Flynn met with Horst during the month of December. Construing all inferences in Flynn's favor, even if the meeting was on December 31, 1996, she failed to file her discrimination charge within 300 days from that date. As in Hardin, given that she knew Kranish's behavior had risen to an unacceptable level by December of 1996, it was not reasonable for her to wait until October 28, 1997 to file a discrimination charge, and the court finds the continuing violation doctrine to be inapplicable. Accordingly, she may not reach back and rely on evidence occurring prior to 300 days before she filed her complaint; her complaint must rise or fall

9

on conduct occurring between January 1, 1997 and October 28, 1997.

The following conduct occurred during the relevant time period: (1) Kranish brought pornographic newspapers, photographs, or magazines to the office and shared them with employees on a regular basis and such materials were left out in the open; (2) Kranish regularly discussed pornographic movies with other employees which Flynn overheard; (3) Kranish encouraged employees to tell dirty jokes on "dirty joke Friday"; (4) in January 1997, Kranish had a conversation with a receptionist about sex toys and sexual vibrators in the presence of all employees; and, (5) in February 1997, Flynn saw Kranish fondling his wife as she sat on his lap. The court finds such conduct, although juvenile and certainly inappropriate, was not severe enough so as to create an objectively hostile or abusive work environment. See Cowan v. Prudential Ins. Co., 141 F.3d 751, 758 (7th Cir. 1998) (derogatory name-calling and rampant sexual joking, among other types of behavior, was insufficient to create an objectively hostile work environment).

None of the sexual joking or discussions about pornography were directed at Flynn. While "second hand harassment" has some relevance in demonstrating the existence of a hostile work environment, Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1144 (7th Cir. 1997), its impact is obviously not as great as if it

10

had been directed at Flynn. See Russell, 243 F.3d at 343; Cowan, 141 F.3d at 758; Gleason, 118 F.3d at 1144. Having pornographic materials lying around an office is certainly unprofessional, but there is no evidence anyone purposefully showed such materials to Flynn or posted the pictures in such a way that it was unavoidable to see them. She was never physically touched, she was not the subject of uninvited sexual solicitations, and there is no evidence the jokes and bantering involved physically threatening or intimidating behavior. See Russell, 243 F.3d at 343. Such conduct is not the only type of evidence needed to survive summary judgment, of course. Nevertheless, reading the record in the light most favorable to Flynn, one finds evidence of offensive and boorish behavior, but nothing exceeding that level. See id. Considering the totality of the circumstances, the court finds Flynn has not produced sufficient evidence from which a reasonable factfinder could conclude she was subjected to sexual harassment so severe or pervasive that it altered the conditions of her employment and created an abusive working environment.

2. **Retaliation**

Under Title VII, employers are prohibited from discriminating against an employee because she has opposed any practice made an unlawful employment practice by Title VII. 42 U.S.C. § 2000e-3(a); Hoffman-Dombrowski v. Arlington Int'l

Racecourse, Inc., No. 00-1678, - F.3d -, 2001 WL 682923, at *6 (7th Cir. Jun. 19, 2001). Flynn has not produced direct evidence of retaliation; therefore, she must proceed under the familiar, burden-shifting McDonnell Douglas method. See id. A prima facie case of retaliation under Title VII requires the plaintiff to present sufficient evidence that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. Russell, 243 F.3d at 344. If the plaintiff gets this far, the defendant must come forward with a legitimate business reason for taking the employment action. Id. If it does so, the plaintiff can survive summary judgment only by presenting sufficient evidence tending to show the defendant's justification is pretextual. Id.

Here, the court finds Flynn has produced enough evidence of retaliation so as to survive summary judgment. Regarding the first prong, although the Seventh Circuit has not yet ruled on the issue of whether an informal complaint of discrimination constitutes protected expression under Title VII, see Krause v. City of La Crosse, 246 F.3d 995, 1000 (7th Cir. 2001); March v. Greater Rockford Airport Auth., No. 99 C 50297, 2001 WL 527451, at *1 (N.D. Ill. May 16, 2001) (Reinhard, J.), Mid-States has not raised the argument. Therefore, the court finds Flynn's

12

complaints to management about Kranish's behavior is statutorily protected activity.

As for the second prong, Flynn claims that after she complained to Kranish about his behavior in November 1995, she was ostracized and ridiculed per Kranish's directive. (LR56.1(b) ¶¶ 15-16) An adverse employment action might occur when an employer orders its employees to shun a plaintiff, provided this activity causes material harm to the plaintiff. Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1039 (7th Cir. 1998); see also Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir. 1998). Flynn has offered no evidence showing the terms and conditions of her employment were altered by such ostracism and, therefore, such conduct did not rise to the level of a materially adverse employment action.

However, a constructive discharge can be considered an adverse employment action. See Heuer v. Weil-McLain, 203 F.3d 1021, 1023 (7th Cir. 2000) (constructive discharge is a classic example of an adverse employment action). "Constructive discharge" refers to the situation in which an employer, without firing an employee, makes her working conditions so miserable it drives her to quit. Hunt v. City of Markham, 219 F.3d 649, 655 (7th Cir. 2000). A person who is told repeatedly that she is not wanted and has no future with the company would not be acting

13

unreasonably if she concluded the work environment was intolerable. Id.

The court finds questions of fact exist regarding the circumstances surrounding Flynn's departure from Mid-States. Under Flynn's version of the facts, she complained to Fridh on April 4, 1997 about Kranish's sexually offensive behavior. (LR56.1(b) ¶ 21)  According to Flynn, within three days after complaining to Fridh, Kranish told her he was, in essence, replacing her with his wife. (Id. ¶ 22)  When Flynn asked Kranish and, later, Horst, what was to become of her, neither responded. (Id. ¶¶ 22-23)  Flynn gave the company an opportunity to address Kranish's conduct, having repeatedly complained to management about him, but to no apparent avail.  A reasonable person could conclude that she no longer had a job with the company, and Flynn is entitled to argue to a jury that she was constructively discharged.  As for the third element, Kranish's decision to allegedly replace Flynn with his wife came on the heels of Flynn's complaints to Fridh about Kranish.  This supplies the necessary causal connection for purposes of Flynn's prima facie case.  Mid-States' articulated reason for Flynn's departure from the company necessarily involve questions of fact

14

as well. Thus, Flynn's retaliation claim survives summary judgment.[2]

However, Flynn also alleges she was denied a promotion and other benefits. (Compl. ¶ 22) It is unclear whether she alleges such denials were because of her sex or in retaliation for having complained of discrimination. In any event, she has offered no evidence in support of this allegation. (LR56.1(a) ¶¶ 29-31) Thus, judgment is entered in Mid-States' favor with respect to this allegation.

### 3. **Constructive discharge**

Flynn portrays the alleged constructive discharge as a separate claim in Count III. An employee can be constructively discharged only if the underlying working conditions were themselves unlawful. Sweeney v. West, 149 F.3d 550, 558 (7th Cir. 1998). There is insufficient evidence her sex prompted the treatment which caused her to quit and, as stated previously, there is no evidence of an actionable hostile environment. As the above discussion makes clear, the constructive discharge could only reasonably be viewed as being part of Flynn's retaliation claim. Therefore, the court considers Flynn's

---

[2] Whether the evidence Flynn has proffered in support of her sexual harassment claim would be admissible as background evidence to explain her retaliation claim will be addressed at a later date. Cf. Place v. Abbott Lab., 215 F.3d 803, 807 (7th Cir. 2000) (to understand retaliation claim, jury obviously needed to hear about prior harassing behavior), cert. denied, 121 S. Ct. 768 (2001).

constructive discharge "claim" to be part of her retaliation claim.

## IV. Conclusion

For the reasons stated above, Mid-States' motion to strike is granted in part and denied in part. Its motion for summary judgment is granted in part and denied in part.

ENTER:

*[signature]*

**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: July 11, 2001